IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TERRELL ROSS,<br><br>   Plaintiff,<br><br>v.<br><br>HEATHER SUDER, et al.,<br><br>   Defendants. | Civil Action No.: SAG-20-3486 |

**MEMORANDUM**

Self-represented Plaintiff Terrell Ross, an inmate presently incarcerated at Dorsey Run Correctional Facility in Jessup, Maryland, filed this action against Heather Suder, Major Rowe, Cpt. D. Moore, Lt. Rafter, Officer Fries, Officer Wilson, Officer Physioc, and Cpt. E. Long on December 1, 2020.  ECF No. 1.  On June 4, 2021, Defendants Rowe, Moore, Rafter, Fries, Wilson, Physioc, and Long (collectively "Correctional Defendants") filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  ECF No. 15.  Correctional Defendants filed a supplement to their Motion on June 23, 2021.  ECF No. 20.  Plaintiff requested an extension of time to respond to the Correctional Defendants' Motion, which was granted to and including August 30, 2021, *see* ECF No. 24, but has filed nothing further.  Defendant Suder filed a Motion to Dismiss on June 30, 2021, to which Plaintiff has not responded.  ECF No. 25.  A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons explained below, the Court will grant both Defendants' Motions.

**Background**

Plaintiff asserts six claims against Defendants regarding incidents which allegedly occurred at Washington County Detention Center ("WCDC") while he was a pretrial detainee. ECF No. 1; ECF No. 15-1 at 4.

Claim 1

First, Plaintiff claims that on June 21, 2020, at approximately 4:00 p.m., he was served pasta containing pork, which he asserts Heather Suder "admitted to Capt. E. Long." ECF No. 1 at 2. Plaintiff states that he is Muslim and therefore this meal was contrary to his religious beliefs. *Id.* Plaintiff filed an Inmate Request Form on June 24, 2020, asserting that he had improperly been served pork. Def. Ex. B, ECF No. 15-4 at 1. Capt. Long responded to Plaintiff's grievance on June 29, 2020, stating that he spoke to the Food Service Director, Heather Suder, who stated that if it did occur "it was an honest oversight on their part," and assured Long that it would not happen again. *Id.*

Claims 2 and 3

Plaintiff makes two allegations of sexual harassment. First, he claims that on August 4, 2020, at approximately 8:00 a.m., Officer Physioc sexually harassed Plaintiff when he "repeatedly put his crotch in [Plaintiff's] face," while speaking to him through the drop slot in his cell. *Id.* at 2-3. Lt. Rafter's Jail Incident Report states that on August 4, 2020, Ross knelt on the floor and placed his face near the food drop box door to request a shower. Def. Ex. G, ECF No. 15-9 at 1. Officer Physioc was assigned to Transportation Duty that day and directed Plaintiff several times to back away from his cell door and he would determine whether Plaintiff's cell restriction in disciplinary segregation had ended. *Id.* A sergeant confirmed that Plaintiff's cell restriction had ended, and Plaintiff was permitted to exit for a shower. *Id.* Lt. Rafter's report found no evidence to pursue a Prison Rape Elimination Act ("PREA") investigation. He found that because Plaintiff was kneeling and Officer Physioc was standing on the other side of the door, it appeared that Physioc's crotch was at Plaintiff's eye level, but that if Plaintiff had moved away from the door as directed or stood up, it would have resolved the issue. *Id.*

Plaintiff also alleges that on August 6, 2020, at approximately 9:15 p.m., Officer Fries told him a "time joke" about his "2 Nuts." ECF No. 1-1 at 1. Plaintiff's grievance states that he asked the time so that he could pray, to which Officer Fries responded, "two of." Def. Ex. G, ECF No. 15-9 at 2. When Plaintiff asked, "2 of what?" Officer Fries said, "these nuts." *Id.* Sgt. Zerkle's Jail Incident Report states that he confirmed with Officer Fries that he made this statement to Plaintiff. *Id.* at 3-4. Sgt. Zerkle contacted Lt. Rafter, who stated that the incident "did not constitute P.R.E.A." *Id.* at 4.

Claim 4

Plaintiff asserts that he subsequently filed PREA complaints against Officers Physioc and Fries. ECF No. 1-1 at 1. Plaintiff claims that Lt. Rafter breached PREA confidentiality on August 7, 2020, at approximately 8:40 a.m., when he discussed these private matters with him in his cell where his cellmate and the inmate on the tier above were in earshot. *Id.* Plaintiff filed a grievance that same day. Def. Ex. H, ECF 15-10 at 1. Capt. Moore responded to the grievance stating that based on the security video, Lt. Rafter spoke to him in the "privacy of [his] cell." *Id.* at 2. Plaintiff appealed and Major Rowe responded on September 8, 2020, denying Plaintiff's request for relief. *Id.* at 3-4.

Claims 5-6

Plaintiff's fifth claim concerns his appeal of the August 7, 2020 grievance about Lt. Rafter's breach of confidentiality, which Plaintiff asserts Major Rowe denied even though he was aware that Plaintiff had a cellmate. 1-1 at 1. Finally, Plaintiff's sixth claim asserts that Officer Wilson restricted his food. *Id.* Additionally, Plaintiff contends that he submitted five grievances on August 18, 2020; September 3, 2020; September 4, 2020; and September 9, 2020, all of which have not been answered. *Id.* Plaintiff states he is on an inappropriate religious diet which is forcing him to be vegetarian. *Id.* According to Plaintiff, Heather Suder told him he was on the "lacto-

3

ovo" diet which does not contain any meat or meat-based products. *Id.* Regardless, Plaintiff claims that on several occasions he was served meat in his meals.[1] *Id.* at 1-2. He asserts that being served the lacto-ovo diet is forcing him to practice a religion he does not worship. *Id.* at 2.

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v.*

---

[1] Plaintiff asserts that he was served hot dogs for lunch on August 13, 2020; a chicken patty for dinner on August 14 and August 26, 2020; a breakfast sausage on August 25, September 16, and September 20, 2020; country gravy at breakfast on September 9 and October 10, 2020; and a hamburger for dinner on September 27 and October 15, 2020.

*Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Correctional Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Correctional Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

## Discussion

### I.  Defendant Suder

Plaintiff's allegations against Defendant Heather Suder include that she admitted to Capt. Long that Plaintiff and other inmates were served pork on June 21, 2020, and that Suder told

5

Plaintiff the lacto-ovo diet does not contain any meat or meat-based products. ECF No. 1 at 2; ECF No. 1-1 at 1. Plaintiff asserts that he is on an improper religious diet that is forcing him to be a vegetarian. ECF No. 1-1 at 1. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Here, Plaintiff does not specifically allege any constitutional violation by Defendant Suder. Even to the extent the Court construes Plaintiff's allegations as a First Amendment claim, Plaintiff fails to allege that Suder was personally responsible for serving Plaintiff pork on June 21, 2020, or how informing him of the contents of a diet offered amounts to a constitutional violation. As such, the Complaint will be dismissed as to Defendant Suder.

## II. Correctional Defendants

### a. Exhaustion (Claims 1-3)

Correctional Defendants argue that Plaintiff's first three claims should be dismissed because Plaintiff failed to exhaust his administrative remedies. ECF No. 15-1 at 12-13. For the reasons discussed below, the Court finds that Plaintiff failed to exhaust his administrative remedies for these three claims.

The Prisoner Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust administrative remedies before this Court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005). Because the Court may not consider an unexhausted claim, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. ____, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust.

*Ross*, 136 S. Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, a court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 136 S. Ct. at 1855. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725 (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

Inmates incarcerated at WCDC may avail themselves of the Inmate Grievance Procedure by submitting "an Inmate Request Form to Classification." Inmate Handbook, ECF No. 15-7 at 57. If an inmate is dissatisfied with the response to their request form, they may file a written appeal to the warden within seven days. *Id.*

If a prisoner's failure to exhaust is "apparent from the facts alleged," then dismissal is warranted. *Anderson*, 407 F. 3d at 682. Alternatively, where the Complaint does not clearly determine the issue, the court must examine material outside the pleadings and treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F. 3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003).

It is undisputed that Plaintiff did not exhaust his administrative remedies for the three incidents on which his first three claims are based. While Plaintiff filed inmate request forms regarding all three incidents, there is no record that he appealed any of the institution's responses.

7

*See* ECF No. 15-4 at 1; ECF No. 15-9 at 1-2.  As such, these unexhausted claims cannot be considered here.  Summary judgment shall be granted in Correctional Defendants' favor for failure to exhaust administrative remedies as to Claims 1 through 3.

      b. Due Process (Claims 4-5)

Correctional Defendants argue that Plaintiff's fourth claim, that Lt. Rafter violated his confidentiality by discussing his PREA complaints where other inmates could hear, fails to state a constitutional violation.  ECF No. 15-1 at 20.  Liberally construing Plaintiff's allegations, the Court presumes that Plaintiff intends to allege that his rights under the Due Process Clause were violated due to Lt. Rafter's alleged failure to comply with either PREA or institutional policy.  However, neither PREA nor WCDC policy requires that Plaintiff's grievances be kept confidential.  *See* ECF No. 15-7 at 4-5.  Even if Plaintiff were correct in his assertion that Lt. Rafter's actions violated the prison's policy on confidentiality, a violation of prison policy alone does not state a due process violation.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*).  Correctional Defendants are therefore entitled to summary judgment in their favor as to Claim 4.

For these same reasons, Correctional Defendants are entitled to judgment as to Claim 5.  Plaintiff's fifth claim stems from his grievance about Lt. Rafter's actions, in which he contends Major Rowe denied his appeal even though he was aware Plaintiff had a cellmate.  ECF No. 1-1 at 1.  Rowe responded to the appeal on September 8, 2020, stating that Plaintiff's requested relief ("to get out the hole," a mental health evaluation, a phone call to his family, and an apology) had either already been provided or were remedies not available to Plaintiff.  Def. Ex. H, ECF No. 15-10 at 4.

As discussed above, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat

superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). As Lt. Rafter's actions did not constitute a constitutional violation, Major Rowe's denial of Plaintiff's appeal does not impose any liability.

    c. <u>Religious Freedom (Claim 6)</u>

Plaintiff's final claim contends that he has been forced be a vegetarian by being placed on the lacto-ovo diet, a vegetarian diet, which he states does not align with his religious beliefs. ECF No. 1-1 at 1-2. He acknowledges, however, that while on this diet, he was still served meat on numerous occasions. *Id.* Plaintiff contends that he filed five grievances on the matter, all unanswered. *Id.* at 1. To be sure, inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)). Therefore, prisoners must be afforded "reasonable" opportunities to practice their religion. *Cruz*, 405 U.S. at 322. This includes the "right to a diet consistent with [the inmate's] . . . religious scruples." *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). A prison official violates this right if he intentionally, and without adequate justification, denies an inmate a diet that is religiously mandated. *Lovelace v. Lee*, 472 F.3d 124, 199 (4th Cir. 2006).

However, only intentional conduct is actionable under the Free Exercise Clause of the First Amendment. *Lovelace*, 472 F.3d at 201. The Fourth Circuit has held that "negligent acts by

officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.*  Therefore, a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.*  Similarly, an official's negligent act does not implicate the Due Process Clause. *Id.*

Plaintiff's only allegation against a specific individual is that Officer Wilson, "restricted [his] food…" ECF No. 1-1 at 1.  Plaintiff's five grievances concerning his diet were responded to by the Defendant Suder, the Food Services Manager, explaining the lacto-ovo diet and addressing the various incidents in which Plaintiff asserted he was not provided the correct food.  Def. Ex. C, ECF No. 15-5 at 1-9.  Plaintiff's conclusory allegations against Officer Wilson do not show any intentional conduct to restrict his ability to practice his religion.  Moreover, the record details multiple occasions on which Suder and WCDC staff responded to Plaintiff's concerns regarding his diet and there is no genuine issue as to whether any individual intentionally served Plaintiff meals inconsistent with his religious beliefs.  *See* ECF 15-5.  Accordingly, Correctional Defendants are entitled to summary judgment as to Claim 6.

## Conclusion

Defendant Suder's Motion to Dismiss is granted.  The Complaint is dismissed as to Defendant Suder.  Correctional Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, is granted.  Judgment is granted in favor of the Correctional Defendants.

A separate Order follows.


November 23, 2021                             /s/
Date                                     Stephanie A. Gallagher
                                         United States District Judge